ELYSE RUTH, Petitioner v COMMISSIONER OF INTERNAL REVENUE, Respondent
Ruth v. Commissioner
Docket No. 25768-89
United States Tax Court
T.C. Memo 1991-30; 1991 Tax Ct. Memo LEXIS 50; 61 T.C.M. (CCH) 1734; T.C.M. (RIA) 91030; January 28, 1991, Filed *50 Decision will be entered for the respondent. John W. Miner, for the petitioner. Michael Noble, for the respondent. NAMEROFF, Special Trial Judge. NAMEROFF
MEMORANDUM FINDINGS OF FACT AND OPINION This case was heard pursuant to the provisions of section 7443A(b)(3) of the Code [1] and Rule 180 et seq. Respondent determined a deficiency in petitioner's Federal income tax, for the taxable year 1983, in the amount of $ 831. The issue for decision is whether petitioner underreported interest income in the amount of $ 4,421.80. Some of the facts have been stipulated and are so found. The stipulated facts and attached exhibits are incorporated herein by this reference. At the time of the filing of the petition in this case, petitioner resided in Los Angeles, California. Petitioner bears the burden of showing respondent's *51 determinations to be erroneous. ; Rule 142(a). Petitioner is an attorney by occupation. Petitioner married David I. Finkelstein (Finkelstein) on August 25, 1974. This marriage was ended by a divorce decree of the Chancery Court of the State of Virginia on September 16, 1980, subject to subsequent consideration of issues relating to property division. On or about December 1, 1980, petitioner and Finkelstein entered into a property settlement agreement. The pertinent terms of that agreement provided as follows: 2. (c) For and in consideration of the conveyance by [petitioner] to [Finkelstein] of her interest in the real properties [consisting of a house and condominium] * * * and of her interest [in certain enumerated bank accounts] * * * [Finkelstein] agrees to pay to [petitioner] the sum of Thirty Seven Thousand Five Hundred Dollars ($ 37,500.00), under the following terms and conditions: (1) Simultaneously with the execution of this Agreement, [Finkelstein] agrees to sign a Confessed Judgment Promissory Note [hereinafter referred to as the Note] in the amount of $ 37,500.00 * * *; (2) Simultaneously with the execution *52 of this Agreement, [Finkelstein] agrees to sign an Assignment by which he assigns 100% of the proceeds to be received from the sale of the condominium * * * to [petitioner]. It is understood and agreed between the parties hereto that all proceeds received pursuant to this Assignment will be credited toward payment of the Note described in paragraph 2(c)(1) * * *; (3) On or before July 1, 1981, [Finkelstein] agrees either to sell or to refinance both the [house] and the condominium so as to relieve [petitioner] from any obligation on the joint Deed of Trust Notes secured on said properties * * *; (4) In the event that [Finkelstein] is unable either to sell or to refinance the [house] and the condominium by July 1, 1981, [Finkelstein] agrees (a) to execute a Deed of Trust Note in the principal amount of the unpaid principal of and accrued interest on the Confessed Judgment Promissory Note * * *, said Deed of Trust Note to bear interest at a rate two (2) percentage points below the prime rate established by First American Bank of Virginia as of July 1, 1981, and to be due on July 1, 2001, and amortized over said 20 year term; (b) to execute a Deed of Trust securing said Deed of Trust *53 Note on the [house] * * *, and (c) to obtain from First and Merchants Bank and/or from National Permanent Savings and Loan Association written agreements that said lenders will hold [petitioner] harmless from the obligations [which are secured by said properties] * * *. Finkelstein also signed the required Note on December 1, 1980, in which he promised to pay petitioner the principal sum of $ 37,500, plus interest at 11 percent per annum. Monthly payments of interest only were to be made commencing on February 1, 1981, and continuing through July 1, 1981, at which time the entire principal amount of $ 37,500 was payable in full. Petitioner contends that she and Finkelstein subsequently modified the above property settlement agreement, whereby Finkelstein would pay a portion of the promissory note on July 1, 1981, with the remaining portion due in four and a half years, on January 31, 1986. This modification was allegedly evidenced by a letter, dated July 29, 1981, signed by Finkelstein, which contained the following statement: "Enclosed you will find my check for $ 14,364.23 representing the final payment of principal and interest due per the note agreement in connection with *54 the property settlement at our divorce conclusion." Finkelstein did make interest payments in March, April, May, June, and July of 1981, for $ 129.87 each, and on July 29, 1981, the principal payment of $ 14,167.25 plus accrued interest of $ 196.98. Petitioner testified that, pursuant to the modification agreement, the principal amount of $ 14,167.25 plus accrued interest was to be deposited into her bank account, where it would accrue interest until January 31, 1986. At that time, a lump-sum payment, representing the difference between the original $ 37,500 note and the then-existing outstanding bank account balance, was due and payable by Finkelstein. The alleged final payment of the principal is allegedly described in a letter to petitioner dated February 27, 1986, addressed from the law firm of Peterson & Pesner, Vienna, Virginia, on behalf of Carol J. Warnsholz (Warnsholz). It read, in pertinent parts, as follows: "re: note from Carol J. Warnsholz * * * enclosed please find the guarantee draft from Carol J. Warnsholz in the amount of $ 11,575.55 in full satisfaction of the above referenced note." Petitioner did not explain who Warnsholz was, her relationship to petitioner *55 or Finkelstein, or how the $ 11,575.55 is related to the purported modified property settlement agreement. [2] We surmise that Finkelstein, sometime after July 1981, must have conveyed the Virginia house to Warnsholz, subject to a Deed of Trust securing the note payable to petitioner, which in turn may have been assumed by Warnsholz. Respondent determined (and petitioner does not dispute) that petitioner earned interest income from four separate accounts as follows: Maryland Federal Savings
$   117.00
Internal Revenue Federal Credit Union
1,063.00
Internal Revenue Federal Credit Union
3,269.00
Wells Fargo Bank
189.00
Total
$ 4,638.00
Petitioner reported interest on her 1983 tax return of $ 216.20, which includes the $ 189.00 from Wells Fargo. No explanation of the source of the balance of the amount reported was given. Significantly, *56 the record does not include exhibits reflecting the ownership of the four accounts identified above. We can only conclude, therefore, that petitioner was the sole owner of those accounts and had full authority and power to dispose of those accounts at any time she saw fit. Respondent contends that, during 1983, petitioner failed to report $ 4,421.80 in interest income, which is taxable pursuant to section 61(a)(4). Petitioner, on the other hand, contends that the unreported interest income represents an installment payment on the property settlement. Petitioner alleges that she and Finkelstein intended that the initial downpayment of $ 14,364.23 [3] plus all accrued interest thereon plus the final payment of $ 11,575.55 be credited as payments on the Note, thereby paying the entire principal. Petitioner's contention seems to ignore the interest that is due on the Note itself. Moreover, petitioner failed to explain how, in 1981, she and Finkelstein could have determined that $ 11,575.55 would be the correct amount of the final payment. Other than petitioner's self-serving testimony, the record is void of any credible evidence concerning petitioner and Finkelstein's alleged agreement *57 modification. It is axiomatic that income is taxable to the one who earns it. In order to prevail herein, it is incumbent on petitioner to establish that she did not earn the interest. Put another way, she must establish, in the context of this case, that it was Finkelstein who earned the interest, actually or constructively, and then actually or constructively paid those amounts to petitioner. Petitioner has failed to prove her case. There is no evidence as to the disposition of the various checks received by petitioner from Finkelstein up to and including the July 29, 1981, initial lump sum payment for $ 14,364.23. If she deposited those funds into "her account," we have no way of determining which of the above four accounts were used, or if other accounts were utilized. Petitioner has neither asserted nor established that petitioner held one or more of these accounts *58 under a resulting trust or a constructive trust theory for the benefit of Finkelstein. A resulting trust arises, for instance, where an individual transfers property to another under circumstances raising an inference that she intended to transfer only a bare legal title and not the beneficial interest. A constructive trust arises when the person holding title to property is subject to an equitable duty to convey it to another on the ground that she would be unjustly enriched if she were permitted to retain it. See 5 A. Scott, Trusts 8-9 (4th ed. 1989). Here, we can only conclude that petitioner held both legal and equitable title to the bank accounts. No trust was imposed thereon, and it has not been established that Finkelstein had any beneficial interest therein. Accordingly, petitioner is liable for the tax on interest income generated from the accounts. Petitioner also asserted that respondent should be equitably estopped from collecting tax on her unreported 1983 interest income because of respondent's affirmative misconduct, including misrepresentation by respondent's agents with regard to her 1982 tax return. Petitioner's theory in this regard is rather hazy. It appears *59 that petitioner's 1982 return was adjusted by respondent, and that a similar issue was raised, i.e., unreported interest income. A deficiency was assessed thereon (apparently as a result of petitioner's failure to file a petition for redetermination of a notice of deficiency) and collection activity ensued. In various correspondence from respondent's personnel, petitioner may have been given improper explanations about her rights and/or remedies. These explanations, she believes, give rise to some sort of estoppel argument as to 1982. Then, in a letter dated October 18, 1989, from the District Director, the statement is made that "the issues for 1983 are substantially the same as those for 1982." The context of this statement was in suggesting that petitioner await the outcome of the 1983 litigation before deciding whether to proceed with a possible refund action for 1982. Petitioner, nevertheless, contends that if the issues for 1982 and 1983 are the same (as opposed to substantially the same) there must be an estoppel argument for 1983. Petitioner is wrong. There are no elements of estoppel present in this case. See , affd. ; . Moreover, respondent is not bound by the erroneous interpretation of the law by his subordinates. ; ; , affg. . Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. In a letter to respondent, dated December 30, 1988, petitioner stated: "The remaining lump sum, due 1/31/86, was timely paid by the then debtor, Carol Warnsholz."↩
3. It is not clear if the interest payments prior to July 29, 1981, were also allegedly to be included as payment of the principal sum of $ 37,500.↩